971 A.2d 1216

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Adam REED, Appellee.**

Supreme Court of Pennsylvania.

Submitted Aug. 18, 2008.

Decided June 16, 2009.

258

Hugh J. Burns, Jr., Esq., Debra A. Breneman, Esq. Philadelphia District Attorney's Office, for Commonwealth of Pennsylvania.

Mitchell S. Strutin, Esq., Strutin & Smarro, Philadelphia, for Adam Reed.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## OPINION

Justice TODD.

In this appeal, we consider whether the filing of a deficient appellate brief constitutes a complete denial of counsel so as to warrant a presumption of prejudice in the context of an ineffective assistance of counsel claim. In the instant case, the Superior Court reversed the PCRA court's denial of Appellee Adam Reed's petition for relief under the Post Conviction Relief Act ("PCRA")[1] on the basis that the filing of a deficient appellate brief by Reed's direct appeal counsel created a presumption of prejudice, and, therefore, that Reed successfully established he was denied effective assistance of counsel. Accordingly, the Superior Court reinstated Reed's appellate rights *nunc pro tunc.* As we conclude that the Superior Court erred in this regard, we reverse.

On March 29, 2002, Reed fatally shot 18–year–old Kenneth Ross on the 2100 block of South 22nd Street in Philadelphia. On April 16, 2003, Reed pled guilty to the general crime of murder and possession of an instrument of crime ("PIC"). At a degree of guilt hearing, the Commonwealth presented the testimony of two eyewitnesses to the shooting, as well as testimony of the medical examiner. In support of a diminished capacity claim, Reed presented the testimony of Dr. Lenae White, a forensic psychiatrist.

The trial court summarized the evidence presented at the degree of guilt hearing as follows:

1. 42 Pa.C.S.A. §§ 9541–9546.

Denise Gill, who saw the shooting, was with [Reed] on the day in question from early afternoon until his arrest shortly after the shooting. She testified that [Reed] smoked marijuana earlier that day, and that he had gone to the hospital afterward because he had a fever. According to Ms. Gill, [Reed] left the hospital without seeing a doctor because he did not want to give his name. At about 9:00 p.m., [Reed] got into an argument with someone she identified as "the mafia guy." Gill told this individual to ignore [Reed] and that [Reed] was "messed up." She and [Reed] left the area . . . and [Reed] went home and got a duffel bag containing some clothes and a gun. [Reed] and Gill then went to her mother's house. There [Reed] changed clothes and smoked some "wet," meaning PCP, along with Gill and her aunt. Gill testified that [Reed] then tried to confront "the mafia guy," but too many people were around so he chose not to do so.

Around midnight, Gill, Elese Lyles and the decedent were inside a take-out Chinese food store at 22nd and McKean Streets. [Reed] was outside. Ms. Gill testified that the decedent stated that he was going to "pop" [Reed]. Decedent had no weapon when he allegedly made this comment. At some point, Lyles ran out of the store. Gill thought Lyles told [Reed] what the decedent had said. Gill came out afterward and saw [Reed] standing in a nearby alley with his .9mm hand gun cocked. Gill stated that she thought [Reed] was acting irrationally and asked him to give her his handgun to hold and to come home with her. [Reed] refused and told her to lure the decedent outside so he could shoot him. Gill refused, and told [Reed] to forget about decedent's comments. [Reed] then asked Lyles to lure [the decedent] outside. Lyles agreed and went back into the store, where she accomplished her mission by promising to have sex with the decedent.

A short time later, Gill saw [Reed] and the decedent arguing near the intersection of 22nd Street and Snyder Avenue. According to Gill, [Reed] told the decedent, "I don't care whether you said it or not." He then pulled out

his gun and fired five or six shots. The decedent was about six to eight feet away when [Reed] began shooting. He attempted to run but was struck several times.... The fatal shot severed decedent's spinal cord and penetrated his lungs and several major arteries.

Gill, who was standing nearby, was grazed in the leg by one of the shots. She immediately ran to her mother's house on 23rd street. [Reed] followed her and disposed of the gun on the way. [Reed] changed his clothes while inside and told Gill that he was going to flee to Cuba. [Reed], Gill and Lyles then got in a cab. They were apprehended by police shortly thereafter.

Trial Court Opinion, 6/30/04, at 2–3 (record citations omitted).

Gill's mother, Mora Collick, also testified that she saw Reed at her house between 9:00 and 10:00 p.m. on the night of March 29, 2002. She stated that at one point she looked inside Reed's duffel bag and saw a .9 mm and two other handguns. When Collick and her sister confronted Reed for bringing a gun into their home, Reed became angry and threatened Collick's sister with the .9 mm. According to Collick, Reed was "acting crazy" and threatened to kill "the mafia guy" and another individual named Kenny.

Another witness, Selina Looney, who was thirteen at the time, was sitting across the street when Reed shot the decedent and Looney positively identified Reed as the shooter. She testified that Reed continued to shoot at the victim even after he had fallen to the ground.

Finally, Reed presented expert testimony by Dr. White to support his claim of diminished capacity, which the trial court summarized as follows:

Dr. White stated that the effects of PCP are generally both immediate and long lasting, and that some of the effects of PCP use often include paranoia, aggression and impulsive or hostile behavior. Prior to trial, Dr. White interviewed [Reed], who told her that the decedent had threatened him in the past. Dr. White also reviewed [Reed's] juvenile record, family background and considered [Reed's] medical

state on the night in question, that [Reed] could have become paranoid as a result of ingesting PCP. Based upon this data, Dr. White opined that [Reed's] PCP use definitely accentuated any paranoia he may have been feeling on the night in question.

Dr. White also stated, however, that [Reed] told her using PCP often made him feel mellow or depressed. Finally, Dr. White testified that PCP use would not prevent someone from formulating and beginning to carry out a specific intent, but it would make it more difficult to control oneself enough to change their mind and stop before completing the intended action.

*Id.* at 4 (record citations omitted).

Based on the foregoing testimony, the trial court found Reed guilty of first-degree murder and sentenced him to life imprisonment for murder, plus a concurrent sentence of 2½ to 5 years for PIC. Reed's post-sentence motions were denied, and he filed a direct appeal in which he raised a single issue, namely, whether the trial court erred in admitting at trial "irrelevant and unduly prejudicial evidence of a prior bad act against [Reed], such that the court was unable to accept [Reed's] defense of diminished capacity?" *Commonwealth v. Reed,* No. 2909 EDA 2003, unpublished memorandum at 5 (Pa.Super. filed June 9, 2005) (*"Reed I "*). Reed's argument was based on the admission of evidence that hours before he killed the victim, Reed had armed himself and prepared to go out and kill a different individual—"mafia guy"—but ultimately was dissuaded by Gill.

After setting forth the relevant case law concerning the admission of testimony regarding prior bad acts, the Superior Court concluded:

We have examined the record in light of these standards, and conclude that [Reed] is not entitled to relief for several reasons. First, [Reed's] argument is not developed sufficiently for us to conduct meaningful appellate review. Failure to provide argument with appropriate citation to authority results in waiver of the issue.

Second, [Reed's] brief refers to evidence in the notes of testimony, but the notes of testimony are not included in the certified record. Thus, we are unable to read the testimony and evaluate [Reed's] argument.

It is an appellant's duty to ensure that the certified record is complete for purposes of review. We decline to review this issue with an incomplete record, and consider the issue to be waived.

Third, even if [Reed] had not waived the issue, [Reed's] argument is undermined by the presumption that a verdict by the judge in a bench trial was not influenced by extraneous prejudicial evidence. Jurists' training and experience equip them to be more critical and judicious in their evaluations than a jury would be. "The verdict of a judge, sitting without a jury, need not be nullified merely as a consequence of exposure to prejudicial evidence."

Fourth, even if [Reed] had not waived the issue, the challenged evidence was admissible under an exception to the prohibition against evidence of prior bad acts. The record reflects that [Reed] had pled guilty to murder generally. The hearing was for the purpose of establishing the appropriate degree of murder, which depends on a defendant's intent or *mens rea*. The events leading to the killing were critical to [Reed's] degree of guilt, particularly in light of [Reed's] defense of diminished capacity and his expert's testimony concerning the effects of PCP use. The evidence was, therefore, admissible under Pa.R.E. 404(b)(2), which permits evidence of other crimes, wrongs, or acts for the purpose of proving **intent, preparation,** or **plan,** all of which were at issue in this case. Also, in a general way, the evidence was admissible under the exception contained in [*Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835, 840 (1989)] (the bad acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development.) Thus, there was no reversible error in the admission of the prior bad acts evidence.
*Reed I*, at 7–9 (emphasis original, case citations omitted). Reed did not seek permission to appeal with this Court.

On May 16, 2006, Reed filed a *pro se* PCRA petition, and a counseled amended PCRA petition subsequently was filed on his behalf. In the amended petition, Reed requested permission to file a direct appeal *nunc pro tunc*, asserting that the Superior Court would not have deemed his issues waived on direct appeal but for direct appeal counsel's ineffectiveness. The PCRA court dismissed Reed's petition on March 7, 2007, finding that Reed failed to establish he was actually or constructively prejudiced by direct appeal counsel's conduct. Reed appealed, arguing that he was denied effective appellate review of his judgment of sentence as a result of direct appeal counsel's ineffectiveness; that counsel's conduct was *per se* prejudicial; and that the PCRA court thus erred in denying him relief under the PCRA.

The Superior Court reversed the PCRA court's order dismissing Reed's PCRA petition. The court first determined that Reed's claim was not previously litigated. It then concluded that Reed's counsel's failure to file an adequate appellate brief entitled Reed to a presumption of prejudice such that Reed established that counsel provided ineffective assistance.

We initially address the Superior Court's determination that Reed's claim was not previously litigated. The Superior Court reasoned:

We recognize this Court discussed the underlying merits of [Reed's] issue in disposing of his direct appeal.... We are hesitant, however, to view this discussion as a ruling on the merits of the issue. The Court disposed of the issue by finding it was waived, as the term "waived" is used in the context of direct appeal, due to the fact that it was not briefed appropriately and was not supplemented with adequate evidence of record. In essence, the Court declined to review the issue because there was nothing to review. Given this reality, we cannot also find the Court ruled on the merits of [Reed's] issue because, as the Court aptly concluded before considering [Reed's] issue, there was nothing to review relative to that issue. To conclude to the contrary would be untenable.

*Commonwealth v. Reed,* No. 982 EDA 2007, unpublished memorandum, at 4–5 n. 5 (Pa.Super. filed October 17, 2007) ("*Reed II* ").

This Court has explained that "[w]here a decision rests on two or more grounds equally valid, none may be relegated to the inferior status of *obiter dictum.*" *Commonwealth v. Swing,* 409 Pa. 241, 245, 186 A.2d 24, 26 (1962). In the instant case, while the Superior Court in *Reed I* determined that Reed's claims were waived, it also determined that even if the claims had not been waived, they were without merit, and the court explained the basis for its conclusions. Thus, the Superior Court's holding in *Reed I* that Reed's claim regarding the admission of prior bad acts testimony was meritless was a valid holding that constitutes the law of the case, *see Commonwealth v. Starr,* 541 Pa. 564, 578, 664 A.2d 1326, 1333 (1995) (holding that the coordinate jurisdiction rule and all its attendant meanings and limitations expressed in previous case law would be assumed into law of the case doctrine),[2] constraining the Court in *Reed II.*

However, the issue of whether counsel's failure to file a proper brief on appeal constitutes a complete denial of the right to effective assistance of counsel, obviating the need to establish actual prejudice, is distinct from the issue considered by the Superior Court in *Reed I* with regard to the underlying merits of Reed's evidentiary claim. Indeed, a determination that Reed's counsel's actions were presumptively prejudicial

---

**2.** This Court in *Starr* explained the law of the case doctrine as follows:

> This doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter. Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

*Id.* at 574, 664 A.2d at 1331.

would render the underlying merits of Reed's evidentiary claims in *Reed I* immaterial for the purpose of establishing the prejudice prong under *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). Accordingly, we next consider whether the Superior Court's determination in *Reed II* that Reed was entitled to a presumption of prejudice was proper.[3]

While the parties herein use "presumption of prejudice," "presumed prejudice," and *"per se* prejudice" in discussing the third prong of the test for a claim of ineffective assistance of counsel as set forth in *Pierce,* we conclude that, for all practical purposes, all of the terms have the same meaning. Specifically, inherent in each of the terms is the recognition by the United States Supreme Court in *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), that there are some circumstances so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified. *Id.* at 660, 104 S.Ct. 2039 (on some occasions, the likelihood that counsel could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial). In the past, this Court has used the terms interchangeably in the same context. *See, e.g., Commonwealth v. Reaves,* 592 Pa. 134, 141, 923 A.2d 1119, 1123 (2007) (noting that the Superior Court did not expressly accept appellant's claim of *"per se* /presumed prejudice"); *Commonwealth v. Spotz,* 582 Pa. 207, 870 A.2d 822, 834 (2005) (reiterating that "it is only in the rarest of circumstances ... that a presumption of prejudice is appropriate in assessing a claim of ineffective assistance of counsel"). However, as the Supreme Court in *Cronic* employed the term "presumption of prejudice" when addressing the prejudice prong of an ineffectiveness of counsel claim based on alleged constructive denial of counsel, we will follow that example and utilize that same terminology.

3. Our standard of review in an appeal from the grant or denial of PCRA relief requires us to determine whether the ruling of the PCRA court is supported by the record and is free from legal error. *See Commonwealth v. Washington,* 592 Pa. 698, 710–11, 927 A.2d 586, 593 (2007).

■  In concluding Reed established that he was denied effective assistance of counsel, the Superior Court in *Reed II* properly noted that, in order to obtain relief based on such a claim, a petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error. *Pierce,* 515 Pa. at 158–59, 527 A.2d at 975; *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (to obtain relief on an ineffectiveness claim, a defendant must prove that his counsel's performance was deficient, and that the deficient performance prejudiced the defense).[4]

The Superior Court determined that Reed's claim was of arguable merit, noting that it previously held "appellate counsel's failure to file an adequate brief on direct appeal constitutes a complete deprivation of the constitutional right to appeal."[5]  *Reed II,* at 6 (citing *Commonwealth v. Johnson,* 889 A.2d 620, 623 (Pa.Super.2005)).  In finding Reed established the second prong under *Pierce,* the court stated "[t]he failure to follow the Rules of Appellate Procedure in perfecting an appeal is *de facto* unreasonable."  *Id.* Finally, the Superior Court held there was "no question that the failure of appellant's counsel on direct appeal to file an adequate brief was highly prejudicial," and indeed held that such failure created a "presumption of prejudice." *Id.*[6]

4.  The arguable merit and the reasonable basis for counsel's conduct prongs, as set forth by this Court in *Pierce,* are derived from the "deficient performance" component of *Strickland. See Commonwealth v. Mallory,* 596 Pa. 172, 195 n. 16, 941 A.2d 686, 699 n. 16 (2008).

5.  A defendant is guaranteed the right to direct appeal under Article V, Section 9, of the Pennsylvania Constitution.

6.  Notwithstanding its conclusion that Reed "carried his burden of proving his counsel's performance on direct appeal was insufficient," the Superior Court continued:

   our analysis does not conclude there as this case presents an additional facet.  The PCRA court, and the Commonwealth by reference, both argue that even though prejudice must be presumed in this case the presumption is overcome by the fact that this Court conducted a

In holding Reed was entitled to a presumption of prejudice, the Superior Court relied on this Court's decision in *Commonwealth v. Halley*, 582 Pa. 164, 173, 870 A.2d 795, 801 (2005). Halley was convicted of, *inter alia*, first-degree murder, and was sentenced to life imprisonment. Halley's counsel filed a timely notice of appeal, and the trial court ordered him to file a concise statement of matters complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. Counsel failed to file a Rule 1925(b) statement, and the trial court issued an opinion addressing only the sufficiency of the evidence to support Halley's conviction. In his brief to the Superior Court, Halley asserted that the evidence was insufficient to support the verdict and that the verdict was against the weight of the evidence. The Superior Court, relying on this Court's holding in *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998), determined that it was precluded from considering Halley's claims as a result of his failure to file a court-ordered Rule 1925(b) statement. In a footnote, however, the Superior Court indicated that even if Halley's issues were not waived, it would agree with the trial court's disposition.

> cursory review of the merits of [Reed's] challenge to the admission of Gill's testimony on direct appeal, irrespective of its finding that [Reed's] issue was waived in the first instance.

*Id.* at 7. With respect to the Superior Court's discussion in this regard, we make two clarifications. First, the Superior Court's characterization of the position of the PCRA court and the Commonwealth concerning the presumption of prejudice in the instant case is not entirely accurate. Indeed, in its opinion, the PCRA court stated "there is no question that [Reed] has proven his claim has arguable merit and that counsel had no reasonable and/or strategic basis for not providing the Superior court with the required documentation. *[Reed] has not, however, established that he was actually or constructively prejudiced by counsel's inaction.*" PCRA Court Opinion, 5/29/07, at 3 (emphasis added). Likewise, the Commonwealth asserts in its brief that, because there was not a complete denial of counsel, it was error to presume prejudice. Commonwealth's Brief at 12. Thus, neither the PCRA court nor the Commonwealth agrees that prejudice must be presumed. Indeed, the issue of whether Reed is entitled to a presumption of prejudice clearly is in dispute. Second, the Superior Court's suggestion that a presumption of prejudice may be "overcome" is also erroneous. Indeed, the crux of a presumption of prejudice is that it cannot be rebutted. *See supra.*

After obtaining new counsel, Halley sought reinstatement of his direct appeal rights under the PCRA. In his petition, he alleged that prior counsel was ineffective for failing to file a Rule 1925(b) statement, resulting in waiver of his claims on direct appeal. The PCRA court dismissed Halley's PCRA petition, concluding that his claims were meritless. On appeal, Halley argued that trial counsel's failure "to protect his appellate rights amounted to an actual or constructive denial of counsel, and as such, that [he] was entitled to a presumption of prejudice." *Halley*, 582 Pa. at 168, 870 A.2d at 798. The Superior Court rejected Halley's attempt to extend this Court's decision in *Commonwealth v. Lantzy*, 558 Pa. 214, 736 A.2d 564 (1999), in which we held an unjustified failure to file a requested direct appeal resulted in a presumption of prejudice, to cases involving a failure to file a Rule 1925(b) statement. This Court granted allowance of appeal to consider whether Halley was entitled to a presumption of prejudice.

In reversing the Superior Court's holding and concluding that counsel's failure to file a court-ordered Rule 1925(b) statement constituted the type of actual or constructive denial of assistance of counsel under which prejudice is legally presumed, we opined:

> [E]xtension of *Lantzy* from the situation entailing the failure to file a requested direct appeal to the circumstance involving the failure to file a Rule 1925(b) statement represents but a modest and incremental step. Indeed, while certainly the holding of any decision is to be read against the facts, *Lantzy's* reasoning expressly subsumed not only the unjustified failure to file a requested direct appeal, but also, the failure to perfect the appeal. Since *Lord* establishes that the submission of a court-ordered Rule 1925(b) statement is a prerequisite to appellate merits review, the Rule 1925(b) statement (when directed) is elemental to an effective perfection of the appeal. Thus, *Lantzy's* reasoning applies by its terms to counsel's dereliction in this case, which left Appellant without an ability to challenge his conviction and sentence by means of the direct appeal.

*Halley,* 582 Pa. at 171, 870 A.2d at 800 (case citations and footnotes omitted).

Additionally, we rejected the Superior Court's and the Commonwealth's suggestion that the failure to file a court-ordered Rule 1925(b) statement is equivalent to a situation where counsel files a Rule 1925(b) statement, but omits meritorious issues:

> [I]t is well established that the decision whether to presume prejudice or to require an appellant to demonstrate actual prejudice "turns on the magnitude of the deprivation of the right to effective assistance of counsel." As we observed in *Lantzy,* the failure to perfect a requested direct appeal is the functional equivalent of having no representation at all. The difference in degree between failures that completely foreclose appellate review, and those which may result in narrowing its ambit, justifies application of the presumption in the more extreme instance. Furthermore, the limiting principle arising from the recognition of such difference in degree addresses the Superior Court's concern that the presumption should not extend to every circumstance in which a defendant may claim no effective appeal.

*Id.* at 172, 870 A.2d at 801 (case citations omitted). Finally, we recognized, but found immaterial, the fact that the PCRA court and the Superior Court (on collateral review) had conducted a merits review of Halley's underlying claims and found them to be without merit. *Id.* at n. 5.[7]

In the instant case, the Commonwealth argues that the Superior Court erred in determining that Reed was entitled to a presumption of prejudice based on *Halley,* and instead argues that this Court's decision in *Commonwealth v. Reaves,* 592 Pa. 134, 923 A.2d 1119 (2007), is controlling. In that case, Reaves appealed the judgment of sentence imposed following a violation of probation ("VOP") hearing, asserting that (1) the VOP court erred in imposing a sentence in excess of the range recommended by the sentencing guidelines without stating its

---

7. The Superior Court reviewed Halley's ineffectiveness claims under the traditional three-part test set forth in *Pierce,* which required Halley to establish actual prejudice.

reasons for doing so on the record, and (2) the sentence was excessive. The Superior Court affirmed the judgment of sentence, noting that the sentencing guidelines do not apply to VOP sentences and, therefore, the VOP court did not err in failing to state its reasons for departing therefrom. It also held that Reaves' excessive sentence claim was waived because he failed to petition for reconsideration or otherwise raise the issue before the sentencing court.

Subsequently, Reaves filed a PCRA petition, asserting a layered ineffectiveness claim on the basis that: (1) VOP hearing counsel provided ineffective assistance by failing to file a motion for modification of sentence, and (2) VOP appeal counsel was ineffective for failing to claim that VOP hearing counsel was ineffective in waiving his sentencing issues. The Commonwealth filed a motion to dismiss on the ground that Reaves was not entitled to relief because he failed to demonstrate that he was prejudiced by counsel's failure to seek modification of sentence. The PCRA court rejected Reaves' argument that VOP counsel's failure to file a motion for reconsideration was the equivalent of failing to file a direct appeal and, therefore, that prejudice should be presumed. The PCRA court further determined that Reaves failed to establish actual prejudice as a result of VOP counsel's conduct, and thus dismissed Reaves' PCRA petition.

Reaves appealed to the Superior Court, which reversed the PCRA court's denial of PCRA relief. The court determined that Reaves' claim had arguable merit because VOP courts are required to state the reasons for the overall sentence imposed, and there was no reasonable basis for VOP counsel's failure to object to the court's failure to do so. The Court further determined that counsel's inaction "caused [Reaves] prejudice because counsel 'effectively waived [Reaves'] right'" to challenge the discretionary aspect of his sentence on appeal, and concluded that Reaves "successfully established an ineffective assistance of counsel claim." *Id.* at 141, 923 A.2d at 1123. In sustaining Reaves' claim of ineffective assistance, however, the Superior Court "did not indicate that it accepted [Reaves'] claim of *per se* /presumed prejudice." *Id.* This Court granted

the Commonwealth's petition for allowance of appeal, wherein the Commonwealth argued that the Superior Court erred in granting relief based on ineffective assistance of VOP counsel where Reaves did not demonstrate that he suffered actual prejudice.

On appeal, we first noted the distinction between the two tests for ineffectiveness. Under the *Strickland/Pierce* test, a defendant must demonstrate actual prejudice. However, pursuant to *Cronic,* there are some circumstances "that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," and prejudice may be presumed. 466 U.S. at 658, 104 S.Ct. 2039. Such circumstances include "where there was an actual or constructive denial of counsel, the state interfered with counsel's assistance, or counsel had an actual conflict of interest." *Reaves,* 592 Pa. at 148, 923 A.2d at 1128. In considering the presumed prejudice exception, we recognized in *Reaves:*

> [T]he defining feature of all of these cases is that the acts or omissions of counsel were of the type that are virtually certain to undermine confidence that the defendant received a fair trial or that the outcome of the proceedings is reliable, primarily because they remove any pretension that the accused had counsel's reasonable assistance during the critical time frame. In this regard, it is worth noting that the portion of the *Cronic* decision explaining the theory underlying the concept of presumptive prejudice begins by observing that effective assistance is constitutionally guaranteed not for its own sake, but because of its effect upon the accused's ability to receive a fair trial.

*Id.* at 149, 923 A.2d at 1128 (quoting *Commonwealth v. Cousin,* 585 Pa. 287, 300–01, 888 A.2d 710, 718 (2005)).

We further noted in *Reaves* that there have been only three circumstances under which this Court determined that counsel's conduct constituted a constructive denial of counsel warranting a presumption of prejudice: (1) where counsel failed to file a requested direct appeal, *see Lantzy, supra;* (2) where counsel failed to file a statement of matters complained of on appeal, *see Halley, supra;* and (3) where counsel failed to file

a requested petition for allowance of appeal, thereby depriving the client of the right to seek discretionary review, *see Commonwealth v. Liebel*, 573 Pa. 375, 825 A.2d 630 (2003).

Ultimately, we concluded in *Reaves* that VOP counsel's failure to object to the VOP court's failure to state its reasons for its sentence, and to file a motion for reconsideration of sentence, did not operate to entirely foreclose appellate review of the decision to revoke probation and to recommit Reaves to a term of imprisonment, but at most "narrowed the ambit" of the appeal new counsel pursued. *Reaves*, 592 Pa. at 150, 923 A.2d at 1129.

In *Commonwealth v. Mallory*, 596 Pa. 172, 941 A.2d 686 (2008), this Court considered whether the presumed prejudice exception to *Strickland/Pierce* should apply where a defendant's right to a jury trial is waived as a result of counsel's failure to challenge the validity of the defendant's oral waiver of that right. Therein, Mallory and two co-defendants were convicted of aggravated assault, attempted murder, and lesser crimes at a bench trial. Following unsuccessful direct appeals, each appellant filed a PCRA petition alleging, *inter alia*, that trial counsel was ineffective in failing to challenge the knowing, voluntary, and intelligent nature of his waiver of a jury trial where the trial court failed to conduct an on-the-record oral jury waiver colloquy pursuant to Rule 620 of the Pennsylvania Rules of Criminal Procedure. The PCRA court granted relief in the form of new trials. The Commonwealth appealed, and the Superior Court reversed, holding that the defendants failed to establish actual prejudice, i.e., that the outcome of their joint trial would have been more favorable if conducted before a jury. This Court granted review "to consider the proper approach to prejudice in the present ineffective assistance of counsel context." *Mallory*, 596 Pa. at 184, 941 A.2d at 694.

Although this Court reversed the Superior Court's decision based on our conclusion that, in order to prove actual prejudice, a defendant asserting that his jury waiver was unknowing and involuntary due to counsel's ineffectiveness need only demonstrate a reasonable probability that the result of the

waiver proceeding would have been different absent counsel's ineffectiveness (as opposed to demonstrating that the outcome of a jury trial would have been more favorable than a bench trial), we rejected the appellants' argument that prejudice should be presumed, stating:

> [T]he claim at issue falls squarely within the *Strickland* line, and not *Cronic's* limited exception. The present circumstances-where appellants, with the assistance of counsel, executed explicit signed, of-record written jury waivers-is unlike the presumed prejudice scenarios found in *Lantzy* and *Halley,* where counsel's lapse caused the complete default of direct appeals requested by the client. This situation, where valid written jury waivers were executed, does not represent the "complete failure" of counsel that would trigger the *Cronic* presumption.

*Mallory,* 596 Pa. at 197–98, 941 A.2d at 702.

In addition to noting the three limited circumstances under which this Court has applied the presumed prejudice exception, we recognized:

> [I]n *Florida v. Nixon,* [543 U.S. 175, 125 S.Ct. 551 (2004)], the U.S. Supreme Court recently reaffirmed the narrow limits of *Cronic's* presumed prejudice exception. In *Nixon,* the High Court held that a showing of actual prejudice was required where the defendant claimed that counsel was ineffective for conceding guilt at the guilt phase of a capital trial. The *Nixon* Court also described the infrequency of circumstances giving rise to the *Cronic* presumption, and reiterated that *Cronic* is limited to situations where counsel's failure is complete, i.e., where "counsel has entirely failed to function as the client's advocate."

*Mallory,* 596 Pa. at 195–96, 941 A.2d at 700–01 (citations omitted).

Most recently, in *Commonwealth v. Steele,* 599 Pa. 341, 961 A.2d 786 (2008), this Court held that the appellant was not entitled to a presumption of prejudice under *Cronic* where appellant's counsel, during his penalty phase argument, merely attacked the jury's guilt-phase verdict and then walked out

of the courtroom, never to return. Distinguishing the circumstances of *Steele* from "the presumed prejudice scenarios found in *Lantzy* and *Halley*, where counsel's lapse caused the complete default of direct appeals requested by the client," we noted that Steele's attorney presented the testimony of two witnesses in support of mitigation, elicited testimony favorable to Steele, and conducted a penalty-phase closing argument. *Id.* at 812. Thus, despite counsel's failure to focus the jury's attention on applicable mitigating factors and his act of leaving the courtroom, we declined to conclude that Steele's counsel "entirely failed to function as Appellant's advocate." *Id.*

■■ With the aforementioned cases in mind, we likewise conclude that the filing of an appellate brief, deficient in some aspect or another, does not constitute a complete failure to function as a client's advocate so as to warrant a presumption of prejudice under *Cronic.* Unlike the case in *Lantzy, Halley,* and *Liebel,* and contrary to the Superior Court's conclusion herein, Reed's direct appeal counsel's conduct in the instant case did not deprive Reed of his constitutional right to appeal. Significantly, Reed's direct appeal counsel filed a timely notice of appeal, which was docketed with the prothonotary. Although the Superior Court in *Reed I* opined that counsel's failure to provide appropriate citation to authority and a copy of the notes of testimony resulted in waiver of Reed's argument, the court did not quash Reed's appeal. Indeed, the issues apparently were sufficiently presented to allow the court to address the merits of Reed's arguments, as the court indicated that it reviewed the evidence and the record. *See Reed I,* at 9. At most, the Superior Court's review of Reed's arguments on the record before it may be viewed as a "narrowing of the ambit" of Reed's appeal. *See Reaves,* 592 Pa. at 150, 923 A.2d at 1129. Moreover, to extend the *Cronic* exception to cases involving a defect in an appellate brief essentially would transform the exception into a rule, as many appellate briefs contain at least one arguable defect.

For the reasons set forth above, we hold the Superior Court erred in concluding Reed was entitled to a *nunc pro tunc* appeal on the basis that his direct appeal counsel was ineffec-

tive as a matter of law, because we conclude that, under the circumstances of this case, Reed is not entitled to the benefit of a presumption of prejudice.

Ordinarily, we would vacate and remand for a determination of whether Reed nonetheless established actual prejudice under *Pierce's* three-prong test for an ineffective assistance of counsel claim. However, as previously noted, the Superior Court in *Reed I*, in addition to finding Reed's evidentiary claim waived, further determined that evidence of Reed's prior bad acts was, in fact, admissible, and this determination is binding on the Superior Court on remand under the doctrine of law of the case. As a result, Reed will be unable, as a matter of law, to establish that he suffered actual prejudice based on trial counsel's filing of a deficient appellate brief. *See Commonwealth v. Collins,* 585 Pa. 45, 61, 888 A.2d 564, 573 (2005) (holding that ineffectiveness claims raised in a PCRA petition are distinct from those claims raised on direct appeal, and must be reviewed under the three-prong test of *Pierce,* but recognizing that in many instances the claim may ultimately fail on the arguable merit or prejudice prong for the reasons discussed on direct appeal). Accordingly, under the circumstances of the instant case, a remand would serve no purpose, and so we reverse the order of the Superior Court.

Order reversed.

Chief Justice CASTILLE, and Justice EAKIN, BAER and McCAFFERY and Justice GREENSPAN join the opinion.

Justice SAYLOR files a dissenting opinion.

Justice SAYLOR, dissenting.

I respectfully dissent, as I regard representation by counsel whose dereliction forecloses effective merits review of all claims raised on appeal to be the functional equivalent of having no counsel at all. I do not see a material difference between forfeiting the entire appeal based on untimely filing; failure to perfect the appeal; and failure to file a brief which can be considered on the merits. In each event, the client garners no effective appellate merits review of any issue.

The majority expresses the concern that extending the presumption of prejudice to a defect in an appellate brief "essentially would transform the exception into a rule, as many appellate briefs contain at least one arguable defect." Majority Opinion, at 275, 971 A.2d at 1227. However, as Appellee stresses throughout his present brief, the situation at hand is one in which counsel on direct appeal forfeited one-hundred percent of the claims raised on appeal. Since this simply is not the norm in appellate litigation, I do not believe the majority's floodgates concern carries a great deal of force. Moreover, this is not an issue entailing relief from the judgment of sentence. Rather, it concerns only the provision of the one appeal as of right to which Appellee was and is constitutionally entitled.

For the above reasons, I would affirm the order of the Superior Court.