J-S14009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
JERRELL M. STEWART :
:
Appellant : No. 1257 MDA 2020

Appeal from the PCRA Order Entered August 21, 2020
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0004058-2008

BEFORE: BOWES, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.: **FILED JULY 13, 2021**

Jerrell M. Stewart appeals from the August 21, 2020 order denying his

petition for relief pursuant to the Post-Conviction Relief Act ("PCRA"). We

affirm.

This Court previously authored an apt summary of the factual events

underlying Appellant's criminal convictions, which provides as follows:

> This case arises out of Appellant's admitted shooting of [the]
> victim, Charles (Mac) Davenport, during an incident in which
> Davenport assaulted Appellant's friend, Drakkari Brooks, and
> attempted to compel him into a vehicle. Events preceding the
> shooting reflect a significant history of antagonism between the
> victim and Appellant and Brooks, in part over an automobile that
> Brooks had obtained as payment for drugs [purchased] from a
> third party . . . . On June 5, 2008, the day before the shooting,
> the victim purportedly stole the vehicle from Brooks, prompting
> him to enlist assistance from Appellant to retrieve it. On the
> following day, Brooks and Appellant ventured to Davenport's
> residence and, using Brooks's extra keys, drove the vehicle and
> its contents away. Among the items in the car where Davenport's
> cell phone and his gun.

In response to Brooks's and Stewarts's unannounced reclamation of the car, the victim located Brooks at the home of Stewart's sister, [Sade Stewart,] who was also Brooks's paramour. Davenport was somewhat larger than Brooks and, after locating Brooks at the scene of the eventual shooting "dragged, shook, yanked, choked and generally manhandled Brooks," and "continually yelled at Brooks to take him to get his 'shit' back." As Brooks, "scared to death," pleaded for help from the assembling crowd, Davenport pushed him back against his SUV and berated him . . . . At that point, Appellant, armed with a .38 caliber handgun, moved behind Davenport and, from a short distance fired one or two shots, causing Davenport to spin around and fall to the ground. Although testimony varied on the number and sequence of the shots fired, multiple eyewitnesses reported that as Davenport lay on the ground begging for his life, Appellant stood over him and fired two more shots, one of which lodged in Davenport's torso, and the second of which ricocheted off the ground. Davenport died within minutes from massive internal bleeding; nevertheless, even as his body lay lifeless, Appellant and his sister kicked the fallen Davenport repeatedly, prompting eventual comment in the coroner's report concerning the extent of physical trauma to the body. Following the shooting, Appellant and Brooks fled and were apprehended by police two days later at a local inn. Thereafter, Appellant wrote his paramour from prison urging her not to testify or provide statements to the police concerning her knowledge of his actions.

*Commonwealth v. Stewart*, 30 A.3d 534 (Pa.Super. 2011) ("***Stewart I***")

(unpublished memorandum at 1-3) (cleaned up).

Appellant was charged with criminal homicide, firearms not to be carried without a license, and recklessly endangering another person ("REAP"). At his trial, Appellant "argued that he had acted in defense of Drakkari Brooks and that[,] consequently[,] his use of deadly force was justified." ***Id***. at 4. However, a jury rejected this argument and found him guilty of first-degree murder along with the remaining charges. He was sentenced to a mandatory term of life in prison without the possibility of parole ("LWOP") as a result of

his murder conviction and received a concurrent aggregate term of imprisonment of thirteen to forty-eight months on the remaining charges. At the time that he killed Davenport, Appellant was seventeen years old.

Appellant filed a direct appeal arguing, *inter alia*, that the trial court had incorrectly instructed the jury as to the legal standard for the justifiable use of deadly force by not instructing "on the use of force to prevent kidnapping." *Id*. at 5-6 (citing 18 Pa.C.S. §§ 505, 506). As an initial matter, this Court concluded Appellant had waived this claim by failing to either request a "justification to prevent kidnapping" charge or object to the instructions delivered by the trial court. *Id*. at 9 (citing **Commonwealth v. Dorm**, 971 A.2d 1284, 1288 (Pa.Super. 2009); Pa.R.Crim.P. 647(B)).

We also provided an alternative rationale that was equally valid, concluding that, "were we to assume . . . that [Appellant's] claim remains properly before us, we would be constrained nonetheless to find it devoid of merit." *Id*. at 9. Specifically, we found Appellant's "suggestion of kidnapping" was "only minimally supported in the record." *Id*. "In the absence of evidence that Davenport did in fact intend a kidnapping, the trial court was not required to instruct the jury on the related justification for [Appellant's] use of deadly force[.]" *Id*. at 9-10. Along similar lines, we also concluded that this claim for relief was susceptible to harmless error analysis. *Id*. at 10-12. Thus, we affirmed Appellant's judgment of sentence. *Id*. at 14.

Appellant's subsequent petition for allowance of appeal in the Pennsylvania Supreme Court was denied on September 27, 2011. **See**

*Commonwealth v. Stewart*, 30 A.3d 488 (Pa. 2011) ("*Stewart II*"). Appellant did not seek a writ of *certiorari* in the United States Supreme Court.

On May 31, 2012, Appellant filed a timely *pro se* PCRA petition along with several other supplemental filings. Counsel was appointed to represent Appellant and an amended PCRA petition was filed on Appellant's behalf challenging the validity of his LWOP sentence under *Miller v. Alabama*, 567 U.S. 460, 465 (2012) ("[M]andatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"). The PCRA court also entered an order providing that "any potential non-LWOP claim(s) which [Appellant] could have raised in their initial filings are hereby preserved and may be raised and fully litigated after the LWOP claim is litigated." Order, 9/4/12. Thereafter, the PCRA court stayed proceedings pending the outcomes of cases addressing the constitutionality of juvenile LWOP sentences.[1]

On January 25, 2016, the United States Supreme Court issued *Montgomery v. Louisiana*, 577 U.S. 190, 212-13 (2016), holding that *Miller* must be applied retroactively. On May 25, 2016, the United States

_____

[1] On January 15, 2014, the trial court entered an order staying the proceedings while the United States Supreme Court considered a petition for *certiorari* in *Commonwealth v. Cunningham*, 81 A.3d 1, 11 (Pa. 2013) (concluding that the holding in *Miller v. Alabama*, 567 U.S. 460 (2012) does not apply to offenders "whose judgments of sentence were final as of the time of *Miller*'s pronouncement"). This petition was denied on June 9, 2014. *See Cunningham v. Pennsylvania*, 573 U.S. 904 (2014). However, on December 29, 2014, the PCRA court again stayed proceedings as the United States Supreme Court considered whether *Miller* applied retroactively.

District Court for the Middle District of Pennsylvania granted Appellant *habeas corpus* relief and directed that he be "remanded to the court of common pleas for re-sentencing in accordance with **Miller** and **Montgomery**." Order, **Stewart v. Wetzel**, **et al**., 2013 WL 3353492 at *3 (M.D.Pa. July 2, 2013).

On July 12, 2017, the PCRA court directed Appellant to file an amended petition "raising all [non-LWOP] claims as preserved by this Court in its [o]rder issued September 4, 2012." Order, 7/12/17. On December 14, 2017, an amended petition was filed, which asserted that Appellant's trial counsel was ineffective in failing to request that the jury be instructed with respect to justified deadly force used in defense of another from kidnapping. **See** Amended PCRA Petition, 12/14/17, at ¶¶ 47-48.

On August 8, 2018, the PCRA court held a hearing at which trial counsel testified regarding a number of alleged deficiencies in his performance, including allegedly failing to: (1) object to the trial court's omission of an "each and every charge" jury instruction; (2) request an instruction regarding the justified use of deadly force in defending another against an attempted kidnapping; (3) object to the trial court's confusion of "perfect" and "imperfect" justification; (4) obtain the services of a "forensic expert consultant" to challenge the conclusions of the pathologist adduced by the Commonwealth; and (5) call Brooks to testify as to Appellant's invocation of a justification defense. **See** N.T. PCRA Hearing, 8/8/18, at 10-28. Appellant also briefly testified. Following the hearing, both parties submitted supplemental briefing on the relevant issues.

On August 21, 2020, the PCRA court filed an opinion and order denying Appellant's remaining requests for PCRA relief. On September 17, 2020, Appellant filed a timely notice of appeal to this Court. Appellant was not ordered to file a concise statement of errors complained of on appeal. On October 5, 2020, the PCRA court filed a statement in lieu of an opinion pursuant to Pa.R.A.P. 1925(a), stating that the reasons for its dismissal of Appellant's PCRA petition could be found in is August 21, 2020 memorandum.

Appellant has raised the following issues for our consideration:

1. The PCRA court erred when it accepted the jury instructions as to an "every element" charge.

2. The PCRA court erred when it accepted the jury instructions on self defense, and when the court refused to accept that Appellant's trial counsel admitted he was ineffective when he objected to the instructions only off the record, thus not preserving the matter.

3. The PCRA court erred when it did not find counsel ineffective for his cross examination of the state's forensic pathologist and not consulting with a forensic pathologist.

4. The PCRA court erred when it did not find counsel ineffective for failing to call Drakkari Brooks to testify to Appellant's justification defense.

Appellant's brief at 5-6 (cleaned up).

We begin with the applicable legal principles. "[A]n appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record and reviews its conclusions of law to determine whether they are free from legal error." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (cleaned up). Along similar lines, the scope of our review

"is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial court level." *Id*.

All of the issues raised by Appellant in the instant appeal implicate the alleged ineffectiveness of trial counsel, which are cognizable claims under the PCRA. *See* 42 Pa.C.S. § 9543(a)(2)(ii). With respect to these claims, Appellant must "plead and prove by a preponderance of the evidence" that his "conviction or sentence" was the result of "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilty or innocence could have taken place." *Id*. "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Spotz*, *supra* at 311 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

Thus, "to obtain relief under the PCRA based on a claim of ineffectiveness of counsel, a PCRA petitioner must satisfy the performance and prejudice test" set forth in *Strickland*, which our Supreme Court has distilled into a three-part inquiry:

> In Pennsylvania, we have applied the *Strickland* test by requiring a petitioner to establish that: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. . . . [I]f a claim fails under any required element of the *Strickland* test, the court may dismiss the claim on that basis.

- 7 -

*Commonwealth v. Housman*, 226 A.3d 1249, 1260-61 (Pa. 2020) (cleaned up). We will address Appellant's ineffectiveness claims *seriatim*.

Appellant's first issue concerns his allegation that trial counsel was ineffective for failing to request an "each and every element" jury instruction, wherein he relies heavily upon this Court's holding in *Commonwealth v. Shoats*, 443 A.2d 814 (Pa.Super. 1982). The trial court in *Shoats* did not "instruct the jury that the Commonwealth had the burden to prove beyond a reasonable doubt each and every element of the various offenses with which [Shoats] was charged." *Id*. Shoats sought review in this Court claiming ineffective assistance of counsel based on defense counsel's failure to object.

On appeal, this Court held that "trial counsel was ineffective for neglecting to object to the [trial] court's failure to instruct the jurors that the Commonwealth has the burden of proving 'each and every element' of the charged offenses beyond a reasonable doubt." *Id*. at 815. In so holding, we quoted extensively from the Pennsylvania Supreme Court's holding in *Commonwealth v. Bishop*, 372 A.2d 794, 796-97 (Pa.Super. 1977) ("The defense had an absolute right to have the jury instructed not only as to the quantum of proof required to establish guilt but also that the requirement extended to each of the material elements of the offense.").

Framing the issue as one sounding in ineffectiveness, Appellant extrapolates the rationale of *Shoats* to his own case, arguing that "[t]his failure could have allowed the jury to find that the evidence as a whole met

the beyond a reasonable doubt standard, which is not correct and which the Pennsylvania Supreme Court has said is prejudicial to the defendant." Appellant's brief at 19.  The PCRA court rejected these arguments, citing this Court's holding in **Commonwealth v. Boyd**, 461 A.2d 1294, 1301 (Pa.Super. 1983).[2]  While acknowledging the jury instructions in Appellant's case did not contain exact verbiage referring to "each and every element" of the charged crimes, the PCRA court concluded the instructions were sufficient when read as a whole.  Memorandum Opinion, 8/21/20, at 13-14.  **See also Commonwealth v. Willis**, 990 A.2d 773, 776 (Pa.Super. 2010) ("This Court's main concern is that the charge clearly, adequately, and accurately presents the law to the jury for its consideration.  The jury charge must be reviewed not in isolated portions but as a whole to ascertain whether it fairly conveys the required legal principles at issue." (cleaned up)).

While the parties and the PCRA court have discussed them extensively, both **Shoats** and **Boyd** predated Pennsylvania's current ineffectiveness

_____

[2]  In that case, Boyd asserted that his trial counsel had rendered ineffective assistance by failing to request an "each and every element" jury instruction in compliance with **Shoats**.  **See Commonwealth v. Boyd**, 461 A.2d 1294, 1301 (Pa.Super. 1983).  While acknowledging that no such instruction was issued, this Court concluded that the mere absence of this language did not automatically entitle Boyd to relief where it was unclear that he would have benefited from such an instruction.  In the absence of any such indication, we concluded that "[t]he court complied with the cardinal rule of jury instruction, under which the only issue is whether the law is adequately, accurately, and clearly presented for the jury's consideration."  **Id**.

paradigm under **Strickland**.[3]  Furthermore, neither case arose as a result of petitions filed pursuant to the PCRA.  Consequently, neither holding applies or discusses the three-factor test that currently controls questions of ineffective assistance of counsel under Pennsylvania jurisprudence, or contends with the specific burdens of proof attendant to PCRA petitions.  Accordingly, both cases are of limited value in assessing Appellant's entitlement to relief.

Here, the gravamen of Appellant's claim for relief is that counsel was ineffective for failing to object to the absence of the "each and every element" jury instruction.  In assessing the arguable merit of Appellant's claim under the three-prong test for ineffectiveness in Pennsylvania, we have closely reviewed the jury instructions given in Appellant's case.  **See** N.T. Trial, 4/20/09, at 661-85.  Based upon that review, we find ample support for the PCRA court's conclusion that the instructions were adequate.  Contrary to Appellant's arguments, the trial court's instructions specified the crimes that Appellant had been charged with, accurately described the Commonwealth's burden of proof, and identified the individual elements of each relevant crime.[4] Thus, we believe that Appellant's claim lacks arguable merit for the purposes of the instant claim of ineffectiveness.

---

[3] **See Commonwealth v. Pierce**, 527 A.2d 973 (Pa. 1987).
[4]  As part of his justification defense, Appellant essentially conceded that he had possessed a firearm without a license at the time of the shooting.  **See** N.T. Trial, 4/20/09, at 666.

In charging the jury with respect to the REAP charge, the trial court instructed the jury that the Commonwealth had to establish "beyond a reasonable doubt" that Appellant's actions "placed others in danger of death or serious injury." *Id*. at 667; *accord* 18 Pa.C.S. § 2705. Appellant was also charged with both first-degree and third-degree murder. With reference to first-degree murder, the trial court correctly articulated that "[t]o find [Appellant] guilty of this offense you must find that the prosecution has proven to you beyond a reasonable doubt that Charles Davenport is dead, that [Appellant] killed him, and that [Appellant] did so with the specific intent to kill and with malice." *Id*.; *accord* 18 Pa.C.S. §§ 2501(a), 2502(a). As to third-degree murder, the trial court similarly accurately stated that the jury could only convicted if it found that "the victim is dead, that [Appellant] killed him, and that [Appellant] did so with malice," beyond a reasonable doubt.[5] *Id*. at 669-71; *accord* 18 Pa.C.S. 2501(a), 2502(c).

The trial court also defined the Commonwealth's burden to disprove Appellant's proffered defense:

> To prove that that force was not justifiable, the Commonwealth must prove one of the following elements beyond a reasonable doubt. One would be that [Appellant] did not reasonably believe that the decedent [sic] was in immediate danger of death or serious bodily injury at the time that [Appellant] used the force and that, therefore, [Appellant's] belief that it was necessary for

---

[5] *See also Commonwealth v. Windslowe*, 158 A.3d 698, 709 (Pa.Super. 2017) ("In order to sustain a conviction for third-degree murder, the Commonwealth . . . need only prove that the defendant killed another individual with malice aforethought.").

- 11 -

him to use deadly force against the decedent to protect another was unreasonable. Put another way, the prosecution must prove either that [Appellant] did not actually believe another person was in danger of death or seriously bodily injury such that he needed to use that deadly force to defend him at that moment or while [Appellant] actually believed he needed to use that force, that belief was unreasonable in light of all the circumstances known to him at that time.

. . . .

The Commonwealth also may prove to overcome the justification defense that [Appellant] knew he could avoid the necessity of using deadly force by trying to cause the person that he was trying to protect to surrender possession of a thing to the person who was claiming a right to it.

*Id*. at 672-74.

Overall, we discern no deficiency in the above-cited instructions given by the trial court. While the precise language discussed in **Shoats** is absent, our review of jury instructions "does not focus upon whether certain 'magic words' were included in the charge. Rather, it is the effect of the charge as a whole that is controlling." **Commonwealth v. Montalvo**, 986 A.2d 84, 99 (Pa.Super. 2009) (cleaned up). As we noted at the outset of our analysis, the adequacy of these jury instructions leads us to conclude that Appellant's first claim of ineffectiveness lacks arguable merit. **See Commonwealth v. Spotz**, 896 A.2d 1191, 1247 (Pa. 2006) ("[A]s there was no reasonable basis for trial counsel to object to the instruction as given, counsel will not be deemed ineffective for failing to raise a meritless objection."). Thus, we discern no error of law or abuse of discretion in the PCRA court's denial of this request for relief.

- 12 -

Appellant's second claim of ineffectiveness also implicates trial counsel's failure to object to allegedly erroneous jury instructions concerning Appellant's justification defense. Although styled as a single issue, Appellant is actually advancing two separate arguments: (1) that trial counsel should have requested a specific instruction with respect to defense against kidnapping; and (2) that trial counsel should have objected to the trial court's alleged confusion of perfect and imperfect justification defenses. We will address each, beginning with the kidnapping instruction claim.

The thrust of Appellant's argument is that the jury should have been specifically instructed that deadly force could be utilized to defend another against kidnapping, and that PCRA counsel was ineffective for failing to object to the omission. *See* Appellant's brief at 27 ("The first error in the instructions was the failure to even allow the jury to consider that there is a justification defense for the prevention of kidnapping.").

As a threshold matter, Pennsylvania law permits the use of deadly force to defend a third party against a bona fide kidnapping attempt. *See* 18 Pa.C.S. §§ 505(b)(2), 506(a). "Where a defendant requests a jury instruction on a defense, the trial court may not refuse to instruct the jury regarding the defense if it is supported by evidence in the record." *Commonwealth v. DeMarco*, 809 A.2d 256, 260-61 (Pa. 2002). Conversely, "jury instructions regarding particular crimes or defenses are not warranted where the facts of

the case do not support those instructions." ***Commonwealth v. Washington***, 692 A.2d 1024, 1028 (Pa. 1997).

Instantly, we are bound by the law of the case to conclude that this particular claim lacks arguable merit. In this specific context, "law of the case" refers to the generally recognized rule that "upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court. ***Commonwealth v. Starr***, 664 A.2d 1326, 1331 (Pa. 1995). Our Supreme Court's holding in ***Commonwealth v. Reed***, 971 A.2d 1216 (Pa. 2009) is particularly instructive on this point.

In that case, Reed filed a PCRA petition arguing that his appellate counsel was ineffective for failing to file an adequate appellate brief challenging the trial court's introduction of prior bad acts evidence. Reed had previously sought to argue on direct appeal that this evidence had been erroneously admitted. This Court had rejected that argument, concluding that the issue was both waived for want of development in Appellant's brief and devoid of substantive merit. ***Id***. at 1219 ("Reed's argument is not developed sufficiently for us to conduct meaningful appellate review. . . . [E]ven if Reed had not waived the issue, he challenged evidence was admissible under an exception to the prohibition against evidence of prior bad acts. . . . Thus, there was no reversible error[.]"). After this Court reversed the PCRA court's denial of Reed's petition, the Commonwealth appealed to our Supreme Court.

The High Court focused upon this Court's finding that the prior bad acts evidence was admissible: "[T]he Superior Court's holding . . . that Reed's claim regarding the admission of prior bad acts testimony was meritless was a valid holding that constitutes the law of the case, constraining the Court in [Reed's subsequent appeal.]" *Id*. at 1220. According to our Supreme Court, it was immaterial that the holding rested simultaneously upon both waiver and a merits-based grounds. *Id*. at 1221 ("Where a decision rests on two or more grounds equally valid, none may be relegated to the inferior status of *obiter dictum*."). As a result of the coterminous finding that the evidence was admissible, the Court concluded that "Reed will be unable, as a matter of law, to establish that he suffered actual prejudice based on trial counsel's filing of a deficient appellate brief." *Id*. at 1227.

As noted above, this Court previously concluded during Appellant's direct appeal that the factual circumstances of this case did **not** warrant providing a jury instruction with regarding to justification and kidnapping. *See Stewart I*, *supra* at 9-10. While we also found the existence of waiver and harmless error in the same portion of *Stewart I*, each of these concomitant holdings bind us with equal force pursuant to the law of the case doctrine. *Reed*, *supra* at 1221. Acknowledging that "ineffectiveness claims are distinct from those claims that are raised on direct appeal," *Commonwealth v. Collins*, 888 A.2d 564, 573 (Pa. 2005), we are nonetheless bound to conclude that Appellant is unable, as a matter of law, to

establish his entitlement to relief under the rubric of ineffectiveness. *See Commonwealth v. Rivera*, 816 A.2d 282, 292 (Pa.Super 2003) ("It is axiomatic that trial counsel will not be considered ineffective for failing to pursue meritless claims."). Where the underlying jury instruction is not warranted, trial counsel cannot be deemed ineffective for not objecting to its omission. *See Commonwealth v. Fletcher*, 986 A.2d 759, 793 (Pa. 2009). Thus, on these grounds we find no error of law or abuse of discretion in the PCRA court's denial of Appellant's request for relief.[6]

Appellant's other justification-related argument concerns the trial court's alleged confusion of perfect and imperfect justification defenses to first-degree murder. *See* Appellant's brief at 27 ("The second error was failing to ever tell the jury what justification was and how to apply it to the first[-]degree murder charge[.]"). With respect to this distinction, our Supreme Court has observed that "[u]nlike the affirmative defense of self-defense, which is a justification for the crime and, if accepted, results in acquittal, a finding of imperfect self-defense results in conviction of the offense of voluntary manslaughter." *Commonwealth v. Rivera*, 983 A.2d 1211, 1218 n.6 (Pa. 2009). "[A] killing may be voluntary manslaughter if the defendant actually believed that the killing was necessary . . . and the killing was

---

[6] We are not bound by the rationale espoused by the PCRA court and may affirm its order on "**any grounds** if the record supports it." *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa.Super. 2012) (emphasis added).

committed pursuant to that [unreasonable] belief." ***Commonwealth v. Galloway***, 485 A.2d 776, 783 (Pa.Super. 1984); ***see also*** 18 Pa.C.S. § 2503(b).

The PCRA court "reviewed the entirety of the trial court's instructions and finds them to have been adequate, accurate and clear" in conveying the application of Appellant's proffered justification defense to the Commonwealth's first-degree murder charges. Memorandum Opinion, 8/21/20, at 15-16. We agree. Our review of the certified transcripts reveals that the trial court concisely informed the jury that if Appellant's actions "were justified, you cannot find him guilty beyond a reasonable doubt." N.T. Trial, 4/20/09, at 671. The trial court then explained that the Commonwealth could negate his justification defense by proving that Appellant had used deadly force based upon an "unreasonable" belief that such force was appropriate. *Id*. at 672-73. Even where such a belief was found to be unreasonable, the trial court explained that a person could still be partially justified. *Id*. at 685 ("[A] person is justified in using deadly force against another not only when another person is in actual danger of unlawful attack but also when the [d]efendant mistakenly but reasonable believes that they are."). Were Appellant's belief found to be unreasonable, but truly held, the trial court instructed the jury that a conviction of voluntary manslaughter would be appropriate. *Id*. We discern no error in the trial court's instructions read as

a whole. **See Willis**, **Montalvo**, **supra**. Hence, this claim of ineffectiveness also lacks arguable merit and no relief is due on this ground.

Appellant's next claim alleges that his trial counsel failed to adequately challenge the testimony of the Commonwealth's expert pathology witness concerning the angle of entry of the victim's gunshot wounds. **See** Appellant's brief at 30 ("Trial counsel provided no relevant peer reviewed documents which would have discredited those angle of entry determinations. Nor did he motion for time to call a counter-expert or have one lined up to testify . . . .").

To the extent that Appellant's argument asserts that trial counsel should have obtained the services of an unnamed rebuttal expert witness, our Supreme Court has discredited these types of claims: "The mere failure to obtain an expert rebuttal witness is not ineffectiveness. Appellant must demonstrate that an expert witness was available who would have offered testimony designed to advance appellant's cause." **Commonwealth v. Chmiel**, 30 A.3d 1111, 1143 (Pa. 2011) (cleaned up). Instantly, Appellant has not identified any expert witness that would have prospectively been available to testify favorably on his behalf. Thus, this portion of his claim for relief necessarily fails for lack of arguable merit.

Appellant also advances an ancillary argument that trial counsel's cross-examination of the Commonwealth's pathology expert was ineffective. By way of support, Appellant refers only to a 2006 publication concerning the use of metal rods to probe gunshot wounds that he asserts trial counsel should have

known about. **See** Appellant's brief at 32-33 ("[S]imply offering a then-existing scientific paper that questioned the methods, was in fact a reasonable . . . method for cross examining the pathologist over the issue of [the] angle of [the victim's] wounds."). Specifically, Appellant asserts that the use of these rods is problematic because it can create "false tracks" in the tissue, which impacts angles of entry. **See** N.T. PCRA Hearing, 8/8/18, at 14-15.

However, our review of the transcripts from Appellant's trial indicates that trial counsel cross-examined the pathology expert on this very point:

> Q: You weren't concerned that using rods would cause damage or cause a different trail through the body?
>
> A: Not at all. I could see the hemorrhage going through the wound path.
>
> Q: There is a school of thought that indicates that using rods can cause additional trails?
>
> A: There may be a school of thought but none that I would consider to be a reasonable sort of thing.

**See** N.T. Trial, 4/16/09, at 396. Although trial counsel did not make use of the precise publication referenced by Appellant, he challenged the veracity of the expert's conclusions on functionally identical grounds. It is well-established that "[t]rial counsel need not introduce expert testimony on his client's behalf if he is able to effectively cross-examine prosecution witnesses[.]" **Chmiel**, **supra** at 1143. Appellant has not articulated how the single treatise referenced in his petition would have enhanced or improved trial counsel's cross-examination of the pathologist. In sum, we discern no

deficiency in trial counsel's cross-examination of the Commonwealth's expert on the particular point. Thus, this claim also lacks arguable merit and the PCRA court did not abuse its discretion or commit an error of law.

Appellant's final claim asserts that trial counsel was ineffective for failing to call Drakkari Brooks to testify on Appellant's behalf. *See* Appellant's brief at 33-35. However, our review of the certified record reveals that trial counsel did, in fact, call Brooks to testify during Appellant's trial. *See* N.T. Trial, 4/20/09, at 615-17. When called, Brooks immediately stated his intent to invoke his Fifth Amendment right against self-incrimination and refused to make any further statement.[7] *Id*. at 616-17.

"Where a claim is made of counsel's ineffectiveness for failing to call witnesses, it is the appellant's burden to show that the witness existed and was available; counsel was aware of, or had a duty to know of, the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the appellant." *Chmiel*, *supra* at 1143. In the specific context of a claim that trial counsel was ineffective for failing to call a particular witness, this Court has previously held that "[a] witness who chooses to invoke his Fifth Amendment right not to testify is

---

[7] Drakkari Brooks had been separately charged with hindering apprehension in connection with the events in this case. *See* N.T. Trial, 4/20/09, at 617. His decision to invoke his Fifth Amendment rights was made upon the advice of his own counsel. *Id*. at 618.

'unavailable'" for the purposes of establishing the defendant's right to relief. ***Commonwealth v. Franklin***, 580 A.2d 25, 29 (Pa.Super. 1990).

Here, the lack of testimony from Brooks was not the result of any oversight by trial counsel, but rather the consequence of his invocation of his Fifth Amendment rights. Appellant has not, and cannot, demonstrate that Brooks was willing to testify on his behalf. Thus, we discern no abuse of discretion or error of law in the PCRA court's denial of his request for relief.

For the foregoing reasons, Appellant has not satisfied his burden of establishing that the PCRA court erred and that relief is due. ***See***, ***e.g.***, ***Commonwealth v. Stansbury***, 219 A.3d 157, 161 (Pa.Super. 2019) (internal quotation marks omitted). Accordingly, we affirm the PCRA court's order denying his petition for relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/13/2021

- 21 -