J-S23029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RANDY DIAZ | : | |
| | : | |
| Appellant | : | No. 3168 EDA 2017 |

Appeal from the PCRA Order September 7, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0011777-2013

BEFORE: SHOGAN, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 17, 2018**

Appellant Randy Diaz appeals from the order dismissing his first timely petition filed pursuant to the Post Conviction Relief Act[1] (PCRA).  Appellant claims that the PCRA court erred in denying his claims regarding the ineffective assistance of counsel, the imposition of an illegal and unconstitutional life sentence without parole, and the ineffective assistance of PCRA counsel.  We affirm.

The underlying facts of this matter were summarized by this Court in Appellant's direct appeal:

> On the evening of December 15, 2011, [Appellant], Christopher Martinez and Alex Torres were together in a schoolyard parking lot with Amanda Cooper and Marcus Jones.  Torres and [Appellant]

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

were discussing that they had a problem with Juan Cruz because he owed Torres money for dealing drugs. Torres, who weighed over 400 pounds, asked [Appellant] to murder Cruz for him because Torres was too big and could not move fast enough to murder Cruz himself. [Appellant] agreed and Torres provided him with a gun.

Torres and some friends, including Jones, drove ahead to look out for the police, while Martinez, who was driving [Appellant's] black BMW with [Appellant] in the passenger's seat, followed behind them. When they reached Coral Street, near Frankford Avenue, [Appellant] told Martinez to stop but to keep the car running. [Appellant] took the gun, exited the vehicle and walked up the block. Martinez heard four gunshots and a few seconds later [Appellant] ran back to the car, jumped in, and yelled for Martinez to drive. Martinez and [Appellant] drove to Martinez's house, where [Appellant] left Martinez.

Cooper testified that prior to the shooting she heard Torres tell [Appellant] "you better shoot him before he shoots you," and saw Martinez and [Appellant] drive around the block in [Appellant's] car. Cooper went into her house and came out five or ten minutes later, observing that [Appellant's] car was parked with the engine running at the intersection of Coral and Rush Streets. Cooper then saw [Appellant] walk out of sight and heard about four to five gunshots from the area nearby. Cooper then saw [Appellant] run down the street holding his pocket and get into the passenger seat of his BMW. She watched Martinez drive away and went toward the area where the gunshots were fired. She saw Cruz, who was injured.

That same evening, Jones heard [Appellant] say that Cruz owed him money and that if he did not pay [Appellant], he was going to kill Cruz. Jones drove away with Torres, who later received a phone call informing him that Cruz had been shot.[2]

On December 15, 2011, at about 6:45 p.m., Police Officer Curt McKee received a radio call, and was dispatched to 2036 East Auburn Street, where he found Cruz lying on the ground suffering from multiple gunshot wounds. Officer McKee placed Cruz into his vehicle and transported him to a nearby hospital.

---

[2] The record reveals that Appellant's birthday was July 25, 1993. Therefore, he was over 18 years of age at the time of the shooting.

- 2 -

> At the scene of the shooting, Detective Gina Chestang recovered five nine-millimeter cartridge casings and two projectile fragments from the 2800 Block of North Coral Street. According to Officer Raymond Andrejczak, an expert in ballistics, all five of the cartridge casings recovered from the scene were fired from the same unrecovered firearm. Both projectiles recovered from Cruz's body were nine millimeters.
>
> On December 18, 2011, at about 10:40 p.m., Police Officer Jill Kerstetter came into contact with [Appellant], who was exiting his black BMW. [Appellant] identified himself as Randy Marshal to Office[r] Kerstetter. Office[r] Kerstetter recovered a Daily News article dated December 16, 2011, regarding the shooting of Cruz, in [Appellant's] pocket, and also recovered thirty-three packets of heroin and cocaine.
>
> On January 12, 2012, at 12:29 a.m., Cruz died of his injuries. According to the Medical Examiner, Cruz's cause of death was multiple gunshot wounds suffered on December 15, 2011.

***Commonwealth v. Diaz***, 3204 EDA 2014, 2015 WL 6111505, at *1–*2 (Pa. Super. filed Aug. 26, 2015) (unpublished mem.) (citation and footnotes omitted).

Appellant was charged with first-degree murder, conspiracy, carrying a firearm without a license, carrying a firearm in Philadelphia, and possession of an instrument of crime (PIC).[3] Appellant filed a pretrial motion seeking, in part, to suppress evidence recovered before and after his arrest, which took place when Appellant was observed exiting his black BMW. The record, however, does not contain an order disposing of Appellant's suppression motion.

---

[3] 18 Pa.C.S. §§ 2502(a), 903, 6106(a)(1), 6108, and 907, respectively.

Jury selection began on October 6, 2014. The following day, Appellant's trial counsel (trial counsel) raised two motions *in limine*. N.T., 10/7/14, at 6-8. First, trial counsel asserted that the evidence that Appellant was in possession of drugs at the time of his arrest should be excluded if the description of the vehicle used in the shooting did not match the description of the BMW Appellant was exiting on the day of his arrest. *Id.* at 11. The Commonwealth responded that the information regarding the recovery of the drugs was revealed during discovery and relevant to support its theory that Appellant killed Victim over a drug debt. *Id.* at 9. Trial counsel did not challenge the Commonwealth's assertion that the evidence had been revealed in discovery before trial. *See id.* at 9, 11. The trial court ruled that the evidence was relevant and admissible. *Id.* at 11-12.

Second, trial counsel challenged the admissibility of evidence that Appellant previously committed a robbery during which he possessed a firearm. Trial counsel argued that the Commonwealth only provided notice of this evidence the week before trial, the Commonwealth failed to provide formal notice of its intent to admit the evidence, and Appellant was prejudiced by the unfair surprise. The trial court found that, because the failure to provide notice was not prejudicial, the evidence was admissible to show Appellant had access to firearms. *See* N.T., 10/8/14, at 7-15.

As noted above, during trial, Officer Kerstetter testified that she recovered thirty-three bags of suspected narcotics from Appellant during the traffic stop. N.T., 10/7/14, at 125. The trial court immediately issued a

cautionary instruction informing the jury that Appellant was not on trial for possessing the narcotics and the evidence was being admitted "only to show the relevance to the shooting." *Id.* at 125-26. Additionally, the Commonwealth elicited testimony from a witness that before the shooting of Cruz, she saw Appellant in her home carrying a firearm.[4]

On October 9, 2014, the jury found Appellant guilty of all charges. That same day, Appellant was sentenced to life imprisonment for first-degree murder and concurrent terms of imprisonment of six to twelve years for conspiracy, one to two years for carrying a firearm without a license, and six to twelve months each for carrying a firearm in Philadelphia and PIC.

Appellant filed post-sentence motions raising a weight of the evidence claim and asserting that the trial court erred in admitting evidence related to Appellant's involvement in a home invasion prior to the date of the homicide for which he was on trial. Post-Sentence Mot., 10/14/14, at 1 (unpaginated). On October 15, 2014, the trial court denied Appellant's post-sentence motions.

Trial counsel filed a timely direct appeal on Appellant's behalf. Appellant raised the following issues: (1) sufficiency of the evidence; (2) weight of the evidence; (3) the trial court erred in "permitting extraneous [Pennsylvania Rule of Evidence] 404(b) evidence [to be admitted,] which was not particularly relevant and, if relevant, was far outweighed by unfair prejudice[, including

---

[4] The witness did not testify to the fact that a robbery had taken place, which was the reason Appellant possessed the gun in her home.

that] the defense was prejudiced by a lack of fair notice as to the issue[;]"and (4) the prosecutor's allegedly inflammatory closing argument. *See Diaz*, 2015 WL 6111505, at *5 (citing Appellant's Pa.R.A.P. 1925(b) statement in his direct appeal).

This Court affirmed Appellant's judgment of sentence on August 26, 2015. On December 22, 2015, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Diaz*, 131 A.3d 103 (Pa. 2015) (table).

Of relevance to the present appeal, this Court suggested in resolving Appellant's direct appeal that he waived his challenges to the admissibility of other bad acts evidence by filing a vague Pa.R.A.P. 1925(b) statement.[5] Nevertheless, we concluded that Appellant's challenge to the evidence that he was in possession of controlled substances at the time of his arrest was meritless because that evidence was relevant to establish Appellant's motive to kill Victim over a drug debt and there was no indication that he suffered prejudice. *Id.* at *5.

Further, this Court found Appellant's weight claim waived in Appellant's direct appeal for failure to develop a proper argument. *Id.* at *4. Although

---

[5] This Court, in Appellant's direct appeal, noted that the trial court was required to guess whether Appellant was challenging the evidence that Appellant was in possession of a gun before the murder or the evidence of his possession of drugs. Although the trial court addressed the evidence of Appellant's possession of the gun in its Rule 1925(a) opinion, Appellant challenged his possession of the drugs in his direct appeal brief. As noted below, Appellant's present claim of ineffective assistance of counsel focuses on the evidence that he possessed drugs.

the trial court addressed Appellant's weight claim in its Pa.R.A.P. 1925(a) opinion, *see* Trial Ct. Op., 1/12/15, at 14, this Court did not address the merits of Appellant's weight claim in the alternative.

On September 27, 2016, Appellant filed the timely *pro se* PCRA petition that gives rise to this appeal. Appellant raised numerous issues including (1) trial counsel's failure to develop a proper weight of the evidence claim in the direct appeal; (2) trial counsel's failure to file a clear Rule 1925(b) statement to preserve his challenge to the admission of prior bad acts; (3) trial counsel's failure to respond to "late discovery"; (4) trial counsel's refusal of an "instruction offer"; and (5) trial counsel's failure to challenge the legality and constitutionality of his sentence of life imprisonment without parole. Appellant's *Pro Se* PCRA Pet., 9/27/16, at 3.

The PCRA court appointed counsel to represent Appellant. On June 3, 2017, PCRA counsel filed a ***Turner/Finley***[6] "no-merit" letter and a motion to withdraw from representation.

Appellant apparently mailed to the PCRA court a *pro se* petition for writ of *habeas corpus*, which the PCRA court received on June 13, 2017, but which was not filed.[7] **See** PCRA Ct. Op., 9/7/17, at 2. Appointed PCRA counsel

---

[6] ***See Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988); ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[7] ***See*** Pa.R.Crim.P. 576(A)(4)-(5) (prescribing rules regarding the filing of *pro se* motions). Appellant's *pro se habeas* petition was not made part of the certified record.

subsequently filed an additional no-merit letter addressing the petition. Counsel concluded that there was no merit to Appellant's claim that his confinement was unlawful because the Pennsylvania Constitution did not permit the passage of any new laws after it was adopted. *See* Letter Re: ***Commonwealth vs. Randy Diaz***, 8/2/17, at 2.

On August 3, 2017, the PCRA court issued a notice of intent to dismiss pursuant to Pa.R.Crim.P. 907. Apparently, on August 21, 2017, Appellant sent a letter to the PCRA court requesting an extension of time to respond to the Rule 907 notice, which was not filed, but which the PCRA court purported to deny.[8] ***See*** PCRA Ct. Op., 9/7/17, at 2. On September 7, 2017, the PCRA court dismissed Appellant's PCRA petition and granted PCRA counsel's motion to withdraw.

Appellant filed a timely *pro se* notice of appeal. The PCRA court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following questions for our review:

1. Whether trial counsel was ineffective for failing to respond to late discovery; declining t[he c]ourt's [jury] instruction offer; and failing to challenge [the] illegal mandatory life sentence?

2. Whether [a]ppellate counsel was ineffective for failing to develop [a] weight of [the] evidence claim and [] not

---

[8] ***See*** *supra* note 7. Neither Appellant's request for an extension of time nor an order denying such a request were docketed or made part of the certified record. Appellant does not challenge the denial of his motion for extension of time.

- 8 -

challeng[ing the] denial of [a p]ost [t]rial motion raising [the] weight of [the] evidence claim?

3. Whether Appellant is entitled to relief in the form of a new sentencing hearing as a result of after-discovered mitigating [b]rain [s]cience and [s]ocial [s]cience evidence?

4. Whether PCRA counsel was ineffective for filing a no-merit letter when the *pro se* claims possessed merit?

Appellant's Brief at 3.

### 1. Ineffective Assistance of Counsel

Appellant, in his first two issues, contends that the PCRA court erred in dismissing several of his ineffective assistance of counsel claims. The following principles govern our review:

> We must examine whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.
>
> * * *
>
> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

*Commonwealth v. Franklin*, 990 A.2d 795, 797 (Pa. Super. 2010) (citations omitted). We may affirm the PCRA court's ruling on any basis apparent in the record. *Commonwealth v. Wiley*, 966 A.2d 1153, 1157 (Pa. Super. 2009).

A. "Late discovery" and a cautionary instruction

Appellant argues that trial counsel erred by not responding to "late discovery." Appellant's Brief at 11. By his reference to "late discovery," Appellant appears to refer to the Commonwealth's notice of intent to introduce prior bad acts evidence that Appellant was in possession of drugs at the time of his arrest. *Id.* Specifically, Appellant asserts that the Commonwealth did not make a "timely disclosure" of the narcotics evidence or its intent to introduce it. *Id.* Appellant suggests that had trial counsel properly "responded," the trial court would have excluded the evidence or "cautioned the jury to ignore the evidence admitted without notice." *Id.*

At the outset, we reiterate that although this Court previously suggested that Appellant's Rule 1925(b) statement in his direct appeal was vague, we concluded that Appellant's claim that evidence that he was in possession of drugs at the time of his arrest was relevant and not unduly prejudicial. *See Diaz*, 2015 WL 6111505, at *5. Our prior conclusion in Appellant's direct appeal is the law of the case. *See Commonwealth v. Reed*, 971 A.2d 1216, 1220 (Pa. 2009).

Moreover, the record belies Appellant's argument that the Commonwealth failed to timely disclose the evidence that Appellant was in possession of drugs at the time of his arrest. Appellant filed a motion to suppress that evidence recovered from stop approximately one year prior to trial. *See* Mot. to Suppress, 10/11/13. Additionally, Appellant's counsel litigated a motion *in limine* seeking to exclude the evidence before trial began,

- 10 -

which the trial court denied.  ***See*** N.T., 10/6/14, at 8-12.  Lastly, Appellant provides no support for his further suggestion that he was entitled to a cautionary instruction for the jury to ignore the evidence based on the alleged "late discovery."[9]  Thus, Appellant's assertions with respect to the admission of the evidence of the drugs recovered at the time of his arrest lack arguable merit.  ***See Franklin***, 990 A.2d at 797.

B. <u>Failure to object to the lack of a "minimum term"</u>

Appellant next claims that trial counsel was ineffective for not arguing that Appellant received an illegal sentence of life imprisonment without parole. Without a supporting citation, Appellant baldly argues that "such a sentence without a minimum which would set [h]is parole eligibility date is illegal and must be modified to include the setting of a minimum sentence."  Appellant's Brief at 12.  Appellant also attempts to distinguish ***Commonwealth v. Yount***, 615 A.2d 1316 (Pa. Super. 1992), from the instant matter by arguing that it "involved a life sentence [but] is distinguishable because it involved a conviction of first[-]degree murder."  Appellant's Brief at 12.  Appellant's claim is frivolous.

First, ***Yount*** is not distinguishable on the basis upon which Appellant relies, since Appellant, like Yount, was convicted of first-degree murder. ***Yount***, 615 A.2d 1317.  Secondly, ***Yount*** specifies that when a trial court

_____

[9] Moreover, the trial court gave a cautionary instruction to the jury that Appellant was not on trial regarding any narcotics violations.  ***See*** N.T. 10/7/14, at 125-26.

- 11 -

does not sentence an individual convicted of first-degree murder to death, the court must sentence the person to life imprisonment. *Id.* at 1321. Indeed, the sentencing court "may not sentence a first[-]degree murderer to a lesser term" than life imprisonment. *Id.* Accordingly, we agree with the PCRA court that Appellant's claim is without merit, and trial counsel was not ineffective for failing to object to the lack of a "minimum term" in Appellant's sentence. *See Franklin*, 990 A.2d at 797.

### C. Ineffectiveness of trial counsel in the direct appeal.

In his next issue, Appellant asserts that trial counsel was ineffective for failing to develop a weight of the evidence claim, arguing that "counsel only relied on case law that fail[ed] to distinguish his argument from his sufficiency of the evidence claim." Appellant's Brief at 14. Additionally, Appellant contends that appellate counsel "failed to challenge whether the trial court abused its discretion in denying his post[-]trial motion raising a weight of the evidence claim." *Id.* Appellant argues that he was prejudiced because this Court did not consider the issue on direct appeal based upon appellate counsel's errors. *Id.* at 15. Because these arguments are closely related, we address them together.

The following principles govern a review of challenges to the weight of the evidence:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight

of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations, quotation marks and footnote omitted). Additionally, "[t]he trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Diggs*, 949 A.2d 873, 879 (Pa. 2008). Our review is limited to determining whether the trial court abused its discretion. *Id.*

As the trial court noted regarding the weight of the evidence during Appellant's direct appeal:

The Commonwealth presented ample evidence as to [Appellant's] guilt. Three eyewitnesses, Jones, Martinez, and Cooper, credibly testified that [Appellant] planned to murder Cruz over a drug debt. Martinez saw [Appellant] leave the vehicle with a firearm. He then heard four gunshots and saw [Appellant] run into his vehicle. Cooper's testimony was consistent with Martinez's testimony as she saw [Appellant] walk towards the area where Cruz was murdered shortly before she heard four or five gunshots. Cooper then saw [Appellant] run from the area where Cruz was murdered. All testimony was consistent with the physical evidence. Martinez testified that he heard four gunshots and Cooper testified that she heard four or five gunshots. Five fired cartridge casings were recovered from the scene of the murder and Cruz suffered four gunshot wounds. This [c]ourt's conscience is not shocked where the evidence was overwhelming as to [Appellant's] guilt. This claim is meritless.

- 13 -

Trial Ct. Op., 1/12/15, at 14. Additionally, the PCRA court succinctly concluded that "there would be little to no chance for relief on a weight of the evidence claim on direct appeal as the verdict was consistent with the evidence and a far cry from shocking one's sense of justice." PCRA Ct. Op., 9/7/17, at 5.

Accordingly, although this Court found the weight of the evidence claim to be waived in Appellant's direct appeal, this challenge does not give rise to ineffectiveness of appellate counsel. Appellant does not establish any abuse of discretion in the trial court's assessment of his intended weight of the evidence claim or in the PCRA court's conclusion that trial counsel's failure to properly argue this claim did not result in actual prejudice. Thus, we agree with the PCRA court that no relief is due. **See Franklin**, 990 A.2d at 797.

### 2. New Sentencing Hearing

Appellant next asserts that he is entitled to a new sentencing hearing as a result of allegedly after-discovered "brain science" and social science that indicate that individuals between 18 and 25 years of age do not have fully developed brains and do not have the psychosocial maturity to be sentenced to life imprisonment without parole. Appellant's Brief at 16. Appellant argues that because he was 18 years of age at the time of the crime, the Eighth Amendment protects him from the cruel and unusual punishment of life imprisonment without parole. *Id.* However, Appellant cites no authority in support of his position.

- 14 -

We note that in **Miller v. Alabama**, 567 U.S. 460 (2012), the United States Supreme Court held that "mandatory life [imprisonment] without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" **Id.** at 465. Significantly, the **Miller** decision "applies to only those defendants who were 'under the age of 18 at the time of their crimes.'" **Commonwealth v. Furgess**, 149 A.3d 90, 94 (Pa. Super. 2016) (quoting **Miller**, 567 U.S. at 465). Moreover, "nothing in **Montgomery** undermines [this Court's] holding [in **Commonwealth v. Cintora**, 69 A.3d 759 (Pa. Super. 2013)] that petitioners who were older than 18 at the time they committed murder are not within the ambit of the **Miller** decision[.]" **Id.**

Here, because Appellant was over the age of 18 at the time he committed first-degree murder, he is not entitled to relief, and the PCRA court properly dismissed this claim.

### 3. PCRA Counsel Ineffectiveness

In his final issue, Appellant asserts that PCRA counsel was ineffective for filing a "no-merit" letter rather than pursuing the foregoing claims. Appellant's Brief at 19. Appellant raises this issue for the first time in the instant PCRA appeal.

We note that a PCRA petitioner is precluded from raising ineffective assistance of PCRA counsel "for the first time after a notice of appeal has been taken from the underlying PCRA matter." **Commonwealth v. Ford**, 44 A.3d 1190, 1201 (Pa. Super. 2012). Accordingly, Appellant has waived this issue.

Even if Appellant had properly preserved the claim of ineffectiveness of PCRA counsel, Appellant would be entitled to no relief as he failed to demonstrate that any of his underlying PCRA claims warranted relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/18