J-S09020-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA
: IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v.
:
:
:
:
RADAMES SANABRIA
:
:
Appellant
: No. 618 EDA 2021

Appeal from the PCRA Order Entered January 14, 2021,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0001110-2011.

BEFORE: LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED MAY 2, 2022**

Radames Sanabria appeals *pro se* appeals from the order denying his first timely petition filed pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A. §§ 9541-46. We affirm.

The pertinent facts and procedural history are as follows: On August 10, 2010, at approximately 10:00 p.m., the fourteen-year-old victim and his friends were hanging out on a street corner in North Philadelphia. Sanabria, who was then seventeen years old, and Rafael Roman walked past the group after which words were exchanged between the victim and Sanabria. As the victim followed Sanabria and Roman across the street, Sanabria turned, pulled a gun from his waistband, and fired four to five shots. The victim ran a short

_____

[*] Former Justice specially assigned to the Superior Court.

distance up the street and then collapsed. Sanabria and Roman ran from the scene. Medics arrived and transported the victim to a nearby hospital where he was pronounced dead.

Several witnesses to the incident identified Sanabria as the shooter and police recovered a video of the shooting from a business located near the crime scene. A warrant was subsequently issued for Sanabria's arrest, and police took him into custody on September 14, 2010.

At his jury trial, three people—Corey Jones, Luis Ortiz, and Roman—identified Sanabria as the shooter based on their own recollections as well as from the video of the shooting introduced into evidence and shown to the jury.[1] A fourth witness, Danny Rivera, did not see the shooting, but provided additional corroboration of the Commonwealth's version of the incident. On October 12, 2012, the jury convicted Sanabria of first-degree murder and firearm offenses. Thereafter, trial court sentenced Sanabria to an aggregate term of thirty-nine years to life imprisonment.

Sanabria appealed to this Court, and we affirmed his judgment of sentence on March 23, 2018. **Commonwealth v. Sanabria**, 188 A.3d 549 (Pa. Super. 2018) (non-precedential decision). Our Supreme Court denied Sanabria's petition for allowance of appeal on August 15, 2018. **Commonwealth v. Sanabria**, 191 A.3d 740 (Pa. 2018).

---

[1] All charges filed against Roman were dismissed after a preliminary hearing.

- 2 -

On August 1, 2019, Sanabria filed a *pro se* PCRA petition, and the PCRA court appointed counsel. On November 16, 2020, PCRA counsel filed a motion to withdraw and a "no-merit" letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). Thereafter, the PCRA court issued a Pa.R.A.P. 907 notice of its intent to dismiss Sanabria's PCRA petition without a hearing. Sanabria filed a timely response.[2] By order entered on January 14, 2021, the PCRA court dismissed Sanabria's petition and permitted PCRA counsel to withdraw. This appeal followed. The PCRA court did not require Pa.R.A.P. 1925 compliance.

Sanabria raises four issues on appeal:

I. Was PCRA counsel ineffective by failing to argue trial counsel's ineffectiveness in neglecting to ask the trial court for a mistrial or curative instruction as to the misconduct by the prosecutor during her closing argument and did the PCRA court err in dismissing this issue?

II. Was PCRA counsel ineffective by failing to argue trial [counsel's] ineffectiveness in [neglecting] to introduce evidence that witnesses were being made to testify due to pressure from the neighborhood, and the police, and did the PCRA court err when it dismissed this claim?

III. Was PCRA counsel ineffective for failing to argue appellate counsel's ineffectiveness for[:] (a) not [ensuring] that [Superior] Court had a complete transcript of the pleadings below[;] and [] (b) for

_____

[2] The Rule 907 notice does not appear in the certified record.

- 3 -

arguing identical arguments for the weight and sufficiency of the evidence arguments?

IV.     Did the PCRA court err when it failed to grant a new trial based on new evidence concerning corruption in the Philadelphia Police Department and was PCRA counsel ineffective for failing to litigate this claim?

Sanabria's Brief at 4 (excess capitalization omitted).

This Court's standard of review for an order dismissing a PCRA petition is to ascertain whether the order "is supported by the evidence of record and is free of legal error.  The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. Blakeney***, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

In each of his issues, Sanabria alleges the ineffective assistance of PCRA counsel.  In ***Commonwealth v. Bradley***, 261 A.3d 381 (Pa. 2021), our Supreme Court set new precedent regarding the preservation of such a claim and held that "a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's

ineffectiveness at the first opportunity to do so, even if on appeal." *Bradley*, 261 A.3d at 401 (footnote omitted). Here, because Sanabria raised his claims in his appellate brief, they are properly before us.

In *Bradley*, the Court also acknowledged that in certain cases when a layered claim of PCRA counsel's ineffectiveness is first raised on appeal a remand may be warranted:

> In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims. However, in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter. Consistent with our prior case law, to advance a request for a remand, a petition would be required to provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness; however, where there are material facts at issue concerning claims challenging counsel's stewardship and relief if not plainly unavailable as a matter of law, the remand should be afforded.

*Bradley*, 261 A.3d at 402 (citations and footnote omitted). As more fully explained below, we need not remand the instant appeal.

To prove PCRA counsel's ineffectiveness based upon prior counsels' omission, a PCRA petitioner must provide a layered claim of ineffectiveness. *Id.* at 402 n.17 (citing *Commonwealth v. Shaw*, 247 A.3d 1008 (Pa. 2021)). Thus, our initial determination is whether Sanabria can establish all three prongs of the ineffectiveness test as to prior counsel. We address each claim separately.

To obtain relief under the PCRA premised on a claim that trial or appellate counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. **Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." **Id.** This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission. **Id.** at 533. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. **Commonwealth v. Martin**, 5 A.3d 177, 183 (Pa. 2010).

In his first issue, Sanabria asserts that trial counsel was ineffective for failing to move for a mistrial or request a curative instruction based on alleged prosecutorial misconduct during closing arguments. Sanabria raised a claim of prosecutorial misconduct in his direct appeal. This Court found the issue to be waived because, although trial counsel objected, counsel did not move for a mistrial or a curative instruction. **Sanabria**, **supra**, non-precedential decision at 13. However, even if not waived, we stated that we would adopt the trial court's reasoning as to why the prosecutorial misconduct claim lacked merit. **Id.** at 13-14.

Given the above, Sanabria's first issue fails. In **Commonwealth v. Reed**, 971 A.2d 1216, 1220 (Pa. 2009), our Supreme Court held that when this Court finds an issue waived on appeal, but then determines that the issue is meritless, the ruling on the merits is a valid holding that constitutes the law of the case on that issue. Moreover, this Court's alternative holding on the merits is binding on this Court when reviewing the issue raised as part of an ineffectiveness claim: Sanabria is "unable, as a matter of law, to establish that he suffered actual prejudice" based on trial counsel's omissions. **Reed**, 971 A.2d at 1227. Thus, Sanabria cannot establish PCRA counsel's ineffectiveness in this regard.

In his second issue, Sanabria claims that trial counsel was ineffective because he failed to introduce evidence that the Commonwealth witnesses were testifying due to pressure from the neighborhood and the police. According to Sanabria, "the victim's family, friends, and the other individual previously accused of killing [the victim], [Roman], made threats and posted information designed to change testimony on Facebook to threaten witnesses so they would not implicate [Roman] as the shooter and instead prejudice" him. Sanabria's Brief at 19-20.

Although Sanabria raises this issue as to several Commonwealth witnesses, in his **Turner/Finley** letter, PCRA counsel informed the PCRA court that Sanabria only identified Ortiz. **Turner**/**Finley** Letter, 11/16/20 at 2. PCRA counsel cannot be faulted for raising a claim regarding the questioning

of witnesses when Sanabria did not identify them. As to Ortiz, Sanabria claimed that trial counsel was ineffective "for not asking questions about Luis [Ortiz] being made to testify." *Id.* PCRA counsel opined that this claim lacked merit because "[t]here was no reason the Commonwealth could not call Luis Ortiz in their case in chief." *Id.* at 4.

The PCRA court also found no merit to Sanabria's claim:

> [Ortiz] was a proper witness to be called by the Commonwealth in its case-in-chief. Moreover, the prosecutor herself questioned [Ortiz] regarding the period of probation he was serving for a theft conviction and while [Ortiz] acknowledged that his probation could be affected by a failure to appear in court as a witness, [he] clearly stated that no promises were ever made to him about assistance in his own criminal matter. As such Sanabria's claim that trial counsel was ineffective for failing to ask "questions about [Ortiz] being made to testify" lacks merits and must be dismissed.

PCRA Court Opinion, 1/14/21, at unnumbered 14-15 (footnote omitted).

Our review of the record supports this determination. During the first day of Sanabria's jury trial, the prosecutor informed the trial court of certain text messages that Ortiz had received on his cell phone. N.T., 10/17/21, at 106. Following a lunch recess, the prosecutor revisited the subject and the following exchange occurred:

> [PROSECUTOR]: Your Honor, to bring it to your attention, I didn't know if you want to take a break, but I received information directly from a cell phone of Luis Ortiz and he had shown officers when he was stopped for this case text messages that he received from an unknown phone number. . . .

The text messages speak for themselves. They talk directly about court. I asked him did you have any other court dates coming up when they said when they're referencing stay away from that court date and that court, what did you think that meant. [Ortiz] said this case. And it says and I won't read them in its entirety, but it also references his little brother who as we discussed is a witness in the case as well. And it says it is telling him to plead the Fifth, telling him not to go to court. Best option, take . . .

N.T., 10/17/12, at 156-57.

The trial court then discussed with the prosecutor the possibility of discovering the identity of the person connected to the phone number associated with the text. The following exchange then occurred:

[THE PROSECUTOR]: We're going to work on it. We're going to ask to introduce it through [Ortiz], who I intend to call today to talk about who will testify and describe demeanor.

THE COURT: Well, I see it as very likely that it will come in one way or another.

[THE PROSECUTOR]: I believe it is probative and I wanted to bring it to your attention, because we do have the exact [sic]. I mean, we got it off his phone today, which we have.

THE COURT: Right. Because I mean he's made a statement in here cool, I won't, you know, if he's intending not to say anything. So if that's what he does, then if it comes up in that way, But [trial counsel].

[TRIAL COUNSEL]: Well Judge, certainly we object. There's no evidence that this has anything to do with my client. As Your Honor recalls from the witness last week, this person Nino Cokeboy ended up being a friend of the victim's family, and not knowing who's doing this, whether it's someone. The Commonwealth's theory, of course, is that it's trying to thwart their prosecution. On the other hand, it could be someone who's trying to prejudice [Sanabria].

- 9 -

THE COURT: I understand that. But if [Ortiz] gets on the stand and either takes the Fifth or changes his testimony, then [the prosecutor] will be able to ask him about these messages. But [trial counsel], I think that based on what I know about your case, it could be equally true that somebody is trying to. Your theory is that it's the other person who was the shooter and it could be somebody working for him that didn't want [Ortiz] to come in and say it is the other person. So I think for me, it could easily be coming from either person. I don't know. I mean, I agree with you. But it doesn't mean that the jury doesn't get to hear that [Ortiz] is being told not to say whatever [Ortiz] is going to say, but that could equally be they're trying to get him not to say that it was [Roman] that did the shooting.

[THE PROSECUTOR]: Your Honor, however, the time frame is subsequent to that preliminary hearing. So the only court case - -

THE COURT: Yes, but [Roman] hasn't been given immunity. And so, [trial counsel] if you wish to make that implication from it, you may[.]

N.T., 10/17/12, at 157-160.[3]

When the prosecutor called Ortiz to the stand, he testified consistently with his police statement—he clearly identified Sanabria as the shooter. *See id.* at 269-287. Moreover, when the prosecutor asked Ortiz about how he felt about coming in to testify, the trial court sustained trial counsel's objection to the question. Thus, the text messages were never introduced into evidence.

_____

[3] Trial counsel was referring to the parties' prior discussion during a hearing on the Commonwealth's pre-trial motions involving Facebook messages that included the police statement of one of the witnesses. *See* N.T., 10/15/12, at 3-14.

- 10 -

Moreover, after considering the testimony from other witnesses for the Commonwealth, the jury heard evidence that the witnesses' testimony was either influenced by the neighborhood and/or the police.

Initially, most of the Commonwealth witnesses testified that they signed their police statements without reading them. For example, Rivera, who is Ortiz's younger brother, testified that, although he originally identified Roman as the shooter, he later identified Sanabria as the perpetrator because "the whole [neighbor]hood was talking about this and I was just going with what I was hearing from the [neighbor]hood[.]" N.T., 10/18/12, at 265.

On cross-examination by trial counsel, Rivera admitted that, on the night of the shooting, he gave a description of Sanabria as the "other guy" who was with the shooter. He also admitted that he gave this description before he "had a chance to hear what the [neighbor]hood was saying[.]" N.T., 10/18/12, at 271. When he later identified Roman as the shooter to the police. Rivera testified that the detective circled Sanabria's photo, and the detective "persuaded" him to sign it. *Id.* at 277.

Finally, in his closing, trial counsel argued to the jury that "just about every witness that got on the stand [for the Commonwealth] told you that the police or the homicide detectives were manipulating evidence, that they left out crucial information and in some instances even created evidence." N.T., 10/22/12, at 48. Trial counsel suggested, however, that these witnesses themselves were manipulating the evidence for some unknown reason. *Id.* at 49.

Given the foregoing, the jury heard testimony—on both direct and cross-examination—from Commonwealth witnesses who stated they were influenced by the neighborhood and/or the police. Thus, Sanabria's claim of trial counsel's ineffectiveness is refuted by the record. As such, Sanabria's claim of PCRA counsel's ineffectiveness for failing to challenge trial counsel's questioning of witnesses, including Ortiz, fails.

In his third issue, Sanabria claims that PCRA counsel was ineffective for failing to raise appellate counsel's ineffectiveness in two respects: 1) for failing to ensure that all of the trial transcripts were transcribed; and 2) for presenting identical arguments regarding his direct appeal challenges to the sufficiency and the weight of the evidence. Neither of these claims have merit.

To support his claim regarding the October 19, 2012, transcript, Sanabria relies on PCRA counsel's assertion in a footnote to his ***Turner***/***Finley*** letter that he had to request transcription of that day of testimony. ***See Turner***/***Finley*** Letter, 11/16/20, at 6 n.1. According to Sanabria, "[t]he absence of the missing transcript resulted in [Superior] Court not having the necessary tool to make [its] determination. Sanabria's Brief at 27. When affirming Sanabria's judgment of sentence on direct appeal, however, this Court did not find the record incomplete, and the complete transcripts appear in the certified record. Moreover, our review of the testimony from that day of Sanabria's jury trial confirms PCRA counsel's opinion that Sanabria was not prejudiced by its alleged absence. On October 19, 2012, the medical examiner testified regarding the cause and manner of the victim's death, and the

Commonwealth called several police officers who testified regarding their interviews with various Commonwealth witnesses. Sanabria does not suggest how the absence of this testimony would affect the issues he raised on appeal.

As to the presentation of his sufficiency and weight challenges, appellate counsel based both claims on the evidence presented identifying Sanabria as the shooter. This Court addressed and rejected Sanabria's weight challenge, and Sanabria does not assert how this Court could have found merit to a sufficiency challenge given that three eyewitnesses, including Roman, identified him as the shooter, and the Commonwealth introduced a video of the shooting. Thus, Sanabria's third claim of PCRA counsel's ineffectiveness fails.

In his final claim on appeal, Sanabria asserts that the PCRA court erred when it failed to grant him a new trial based upon after-discovered evidence of police corruption, and that PCRA counsel was ineffective for failing to litigate the claim. The PCRA court found that Sanabria was not entitled to relief. To review this conclusion, we first note the test we must apply to an after-discovered evidence claim. When discussing the test in the context of a PCRA appeal, our Supreme Court recently summarized:

> [W]e have viewed this analysis in criminal cases as comprising four distinct requirements, each of which, if unproven by the petitioner, is fatal to the request for a new trial. As stated, the four-part test requires the petitioner to demonstrate the new evidence: (1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a

different verdict if a new trial were granted. The test applies with full force to claims arising under Section 9543(a)(2)(vi) of the PCRA. In addition, we have held the proposed new evidence must be producible and admissible.

***Commonwealth v. Small***, 189 A.3d 961, 972 (Pa. 2018) (citations omitted).

In addition, we note that credibility determinations are an integral part of determining whether a PCRA petitioner has presented after-discovered evidence that would entitle him to a new trial. ***See***, ***e.g.***, ***Small***, 189 A.3d at 978-79 (remanding for the PCRA court to make relevant credibility determinations). We have stated, prior to granting a new trial based on after-discovered evidence, "a court must assess whether the alleged after-discovered evidence is of such a nature and character that it would likely compel a different verdict if a new trial is granted." ***Commonwealth v. Padillas***, 997 A.2d 356, 365 (Pa. Super. 2010). "In making this determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." ***Id.***

The PCRA court explained why Sanabria's after-discovered evidence claim had no merit:

Here, Sanabria has provided no detail of who was corrupt, what actions constituted the corruption, nor how such corruption was related to the instant case. PCRA counsel represented that, from review of the record, the "corrupt" detective appeared to be Detective Nordo; however, in summarizing the trial testimony of each witness, PCRA counsel concluded that the record did not support any basis for relief. Detective Watkins' testimony provided that he himself had interviewed [Roman] along

- 14 -

with Detectives Bamberski and Nordo. Detective Nordo was not the assigned detective on the case and he did not testify at trial. Given Detective Nordo's very limited involvement in the case and the overwhelming evidence of guilty presented at trial, PCRA counsel concluded that not claim could be made, and, as such, Sanabria's [after-discovered evidence] claim must be dismissed.

PCRA Court Opinion, 1/14/21, at unnumbered 6-7.

Our review of the record supports the PCRA court's conclusion. Sanabria proffered no nexus between Detective Nordo's alleged misconduct and the facts of his case. *See*, *e.g.*, **Commonwealth v. Foreman**, 55 A.3d 532, 537-38 (Pa. Super. 2012) (affirming denial of PCRA after-discovered evidence claim because police detective's subsequent misconduct would not lead to a different verdict; there was no nexus shown between the defendant's case and the misconduct that occurred two years later). Thus, Sanabria's fourth issue fails.

In sum, we have concluded that a remand is not necessary because we are able to conclude Sanabria's claims of PCRA counsel's ineffectiveness are meritless based on the record before us. **Bradley**, **supra**. Additionally, the PCRA court properly rejected Sanabria's after-discovered evidence claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/2/2022